In re James Winslow GRAVES, doing business as Custom Woods Construction, LLC, and Kathryn Patricia Graves, Debtors.

Jeffrey A. Weinman, Trustee,

Appellant,

v.

James Winslow Graves and Kathryn Patricia Graves, Appellees.

BAP No. CO–08–038.
Bankruptcy No. 07–20569–ABC.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Oct. 22, 2008.

Submitted on the briefs: * Jeffrey A. Weinman, Trustee, pro se.

Before BOHANON, MICHAEL, and THURMAN, Bankruptcy Judges.

THURMAN, Bankruptcy Judge.

The Chapter 7 bankruptcy trustee appeals the bankruptcy court's order denying his motion to compel debtors, James and Kathryn Graves ("Debtors") to turnover the value of a pre-petition tax refund that Debtors applied to prepayment of their 2007 taxes, prior to filing their bankruptcy case. We affirm.

## I. BACKGROUND

■■■ In July 2007, Debtors filed their 2006 tax return. Pursuant to that return, Debtors were entitled to a refund for overpayment of taxes in the amount of $3,000.[1] The Debtors filed a voluntary Chapter 7 bankruptcy petition on September 20, 2007, and did not elect to split their tax year pursuant to 26 U.S.C. § 1398(d)(2).[2] In January 2008, trustee Jeffrey Weinman ("Trustee"), filed a motion for turnover of the Debtors' 2006 tax refund. The Debtors responded, and the matter was considered at a non-evidentiary hearing on March 26, 2008. The bankruptcy court ruled orally on the record and, on the same date, issued a minute entry denying

the Trustee's motion. The Trustee filed a notice of appeal on April 4, 2008 and, on June 3, 2008, this Court issued an order determining the minute entry to be a final order for the purposes of appeal.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] Because this Court has already determined that the order sought to be appealed is final, the notice of appeal was timely filed, and no party to this appeal has elected to have the appeal heard by the district court, this Court has appellate jurisdiction.

## III. ISSUE AND STANDARD OF REVIEW

The single issue presented by this appeal is whether a pre-petition tax refund that the Debtors elected to apply in prepayment of a subsequent year's tax liability is properly subject to turnover pursuant to 11 U.S.C. § 542. This is an issue of law, which this Court reviews *de novo*.[4]

## IV. DISCUSSION

■■ This appeal exemplifies the concept that "you cannot get blood out of a turnip."

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Although the Debtors' tax return directs that the amount of $3,820 be applied to their 2007 estimated tax, this is because they failed to subtract the amount of taxes owed for 2006, $820, from the amount of taxes paid in 2006, $3,820. *See Debtors' IRS 1040 (2006)* at 2, *in* Appellants' Amended Appendix at 19. Thus, their actual refund entitlement was only

$3,000, and that is the amount for which they received a pre-payment credit.

2. This provision allows debtors in Chapter 7 and 11 cases to treat their taxable year as two taxable years; one ending on the day prior to filing of their petition, and the other beginning on the petition date. However, any such election must be made on or prior to the date on which the bankruptcy case is commenced.

3. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

4. *In re Duncan,* 329 F.3d 1195, 1198 (10th Cir.2003).

The Trustee seeks to obtain from the Debtors that which they simply do not have: the amount they could have received from the IRS in 2007, but did not. In most lawsuits or contested matters, plaintiffs or others obtain judgments or orders for damages without consideration of the defendants' ability to pay. However, this is not an ordinary matter, but a Chapter 7 bankruptcy case, which is governed by the Bankruptcy Code. Thus, in this case, a trustee has been appointed to, among other duties, "collect and reduce to money the property of the estate."[5] In order to carry out their duties, bankruptcy trustees are given certain powers by the Bankruptcy Code. Section 542(a) of the Bankruptcy Code authorizes a bankruptcy trustee to compel turnover of estate property from anyone who has it in their "possession, custody, or control, during the case."[6] The Trustee contends that the Debtors' 2006 tax refund is both property of the estate and subject to the turnover power. The Debtors respond that, because of their pre-payment election, they are not now, and never have been, in possession, custody, or control of that refund during the pendency of the bankruptcy case.

This is not the first case involving such a dispute. Several of these cases deserve our analysis. In 1948, the United States Supreme Court defined the pre-Bankruptcy Code turnover power, noting that "the primary condition of [turnover] relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so."[7] The Court also noted that "we do not consider resort to this particular proceeding [turnover] ap-

propriate if, at the time it is instituted, the property and its proceeds have already been dissipated, no matter when that dissipation occurred."[8] These concepts were subsequently incorporated into the statutory turnover provision, § 542(a).

In *Grant v. United States (In re Simmons)*,[9] the debtor elected to have an overpayment of taxes applied to his next year's tax liability. Six days later, he filed for Chapter 7 bankruptcy relief. The trustee in bankruptcy filed an adversary proceeding against the Internal Revenue Service ("IRS") seeking turnover of the prepaid funds. The court denied the relief, finding that the prepaid funds were not property of the estate, stating:

> Thus, debtor's overpayment, at his election, became a payment of his 1988 estimated tax rather than an overpayment of his 1987 taxes. Once debtor made this election, as a matter of law, he no longer had an overpayment for which he could file a claim for refund. Consequently, the debtor's prepetition estimated tax payment cannot be considered a legal or equitable interest of the debtor in property as of the commencement of the case, and such payment is not subject to turnover.

*Id.*, at 607–08. This outcome was based, in part, on the Internal Revenue Code, 26 U.S.C. § 6513(d), which provides that, where an overpayment of tax is applied as a credit on the next year's taxes, "no claim for refund of such overpayment shall be allowed for the taxable year in which the overpayment arises."

---

**5.** 11 U.S.C. § 704(a).

**6.** 11 U.S.C. § 542(a).

**7.** *Maggio v. Zeitz (In re Luma Camera Serv., Inc.)*, 333 U.S. 56, 64, 68 S.Ct. 401, 92 L.Ed. 476 (1948).

**8.** *Id.* at 64, 68 S.Ct. 401.

**9.** 124 B.R. 606 (Bankr.M.D.Fla.1991).

The trustee in *Wittman v. United States (In re Weir)*,[10] similarly attempted to obtain prepaid taxes from the IRS, asserting claims for turnover, voidable preference, and fraudulent conveyance. The court rejected all three claims. With respect to the turnover claim, the court noted that, once the prepayment election had been made, "debtor retained only the right to have the payment credited against his 1985 tax liability and to have any excess refunded to him."[11] However, the court did note that, although the estate was not entitled to recover the prepayments as property of the estate, it "would be entitled to share in any refund due the debtor."[12]

In *In re Middendorf*,[13] debtors pre-paid $22,250 on their 2005 taxes, eight days before filing a Chapter 7 petition. In 2006, debtors filed their 2005 tax return, which entitled them to a refund in excess of $20,000. The trustee made demand on the IRS for the entire pre-payment amount, contending that it was a preferential transfer. Trustee and the IRS entered a settlement, subject to the court's approval, for turnover of the entire pre-payment amount. Debtors objected. The court found that the debtors' pre-payment did not constitute a preference, because a preference requires proof of payment of an antecedent debt. Since debtors' 2005 tax obligation did not arise until the end of 2005, and the prepayment occurred in April 2005, the trustee could not prove that element of the claim. Likewise, the court held that the pre-payment was not a fraudulent transfer because debtors had received reasonably equivalent value for the payment, which consisted of a dollar for dollar credit and the right to a refund if their next year's tax debt was less than the pre-payment. Nonetheless, the court held that "the portion of Debtors' tax refund attributable to pre-petition withholdings and payments is Estate property," and that the debtors' "contingent reversionary interest" vests "once the ultimate tax liability is assessed and satisfied."[14]

Finally, the Ninth Circuit Court of Appeals recently upheld a bankruptcy court's determination that the "debtors' pre-bankruptcy application of their right to tax refunds to post-bankruptcy tax obligations constitutes an asset that must be turned over to the bankruptcy trustee," pursuant to § 542.[15] In that case, the debtors applied their 2001 overpayment to their 2002 tax liability, sixteen days prior to filing for bankruptcy relief in 2002. Although the trustee demanded turnover of that pre-payment, the debtors did not comply. In 2003, the debtors filed their 2002 tax return, applying the pre-payment to their tax liability. The trustee sought turnover of the pre-payment from the debtors, who responded that their pre-payment election had "extinguished their interest" in those funds, leaving nothing for the trustee to claim on behalf of the estate. The court disagreed, stating that "nothing in section 541 [defining estate property] requires that the debtor's interest be immediately capable of being liquidated into cash in order to constitute property of the estate."[16] As such, the court held that the debtors' right to a "credit toward future taxes constituted estate property at the

---

10. No. 85–40456–7, 1990 WL 63072 (Bankr. D.Kan. Apr. 3, 1990).

11. *Id.* at \*2.

12. *Id.*

13. 381 B.R. 774 (Bankr.D.Kan.2008).

14. *Id.* at 778–79.

15. *Nichols v. Birdsell*, 491 F.3d 987, 988 (9th Cir.2007).

16. *Id.* at 990.

time the Debtors filed for bankruptcy."[17]

Significantly, the *Nichols* court focused entirely on the issue of whether or not the pre-payment was property of the estate, rather than the issue of whether turnover was an appropriate remedy, and is therefore distinguishable. In the present matter, the propriety of turnover is the exclusive issue. Assuming, without deciding, that the pre-payment constitutes estate property as a contingent reversionary interest, this Court must decide whether the Bankruptcy Code empowers trustees to demand its turnover. We hold that it does not. Turnover is a remedy that is specifically limited by § 542 to "property that the trustee may use, sell, or lease," and is in the turnover target's possession or control during the bankruptcy case. A contingent reversionary interest in funds held by another is simply not something that is in the debtor's possession that can be turned over to the trustee. Even if a debtor had an equivalent amount of funds in an accessible account, a trustee could not compel their turnover unless he could prove that those funds were the proceeds of the pre-payment. A trustee in bankruptcy can no more compel a debtor to turnover funds that he does not have than he can squeeze blood out of a turnip.[18]

The Bankruptcy Code does not expand the debtor's interests against others, "and, if those interests were limited [when the petition was filed], the trustee's rights to possession are similarly limited."[19] When the petition was filed in this case, the Debtors had no current right to possession of the pre-paid taxes. This is equally true as of the time that the Trustee filed the adversary proceeding from which this appeal arose. A contingent right to a refund in the event that the Debtors overpaid their 2007 taxes is not something, in our opinion, that is subject to turnover. Simply put, under these facts, the Trustee may not take that which the Debtors do not have. For this Court to hold otherwise could allow trustees to compel pre-petition tax withholdings by debtors' employers to be subject to turnover actions against the debtors, since such payments may also be deemed tax "credits." However, such is not the purpose or the effect of the turnover power.

We need not, and do not, decide the more difficult issue of the estate's interest in the prepaid funds, nor whether the Trustee has any currently cognizable claim against the IRS for return of any of the prepaid funds.[20] Our decision is limited to the propriety of turnover under the facts of the present case.

## V. CONCLUSION

Since the funds sought by the Trustee were not within the Debtors' possession, custody, or control during the pendency of the bankruptcy case, we hold that the bankruptcy court properly refused to or-

---

17. *Id.*

18. Nonetheless, we specifically decline to make any determination here regarding the propriety of a turnover request directed at a debtor who leaves himself without the ability to comply with a turnover request by inappropriately dissipating estate property post-petition.

19. *Grant v. United States (In re Simmons)*, 124 B.R. 606, 607 (Bankr.M.D.Fla.1991) (citing 4

*Collier on Bankruptcy* ¶ 541.01, at 541–5, 541–7 (15th ed.1979)).

20. In fact, the appellate record does not indicate the current status of Debtor's tax liability. By now, Debtor most likely has filed his 2007 tax return, and his 2007 tax liability has been established. Though he may well have received a refund from the IRS, that refund was not at issue in the case before this Court, and we do not opine as to the parties' respective entitlement to any such funds.

der turnover of the pre-paid taxes. The bankruptcy court's judgment is therefore affirmed.