**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**January 3, 2017**

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE KENNETH WAYNE AULD,

Debtor.

_____

STEPHEN W. RUPP, Chapter 7 Trustee,

Appellant,

v.

KENNETH WAYNE AULD,

Appellee.

BAP No. UT-15-061

Bankr. No. 15-25411
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Utah

_____

Mark Clifford Rose of McKay, Burton & Thurman, P.C., Salt Lake City, Utah, for the
Appellant.

_____

Before **NUGENT**, **SOMERS**, and **HALL**, Bankruptcy Judges.

_____

**NUGENT**, Bankruptcy Judge.

_____

Collecting property of the estate is a Chapter 7 trustee's first duty.[1] The debtor must cooperate with the trustee in that pursuit.[2] Anyone who has any of the debtor's property must deliver it to the trustee or account for it.[3] Anyone, including the debtor, who has recorded information about estate property or debtor's financial affairs can be ordered to turn it over.[4] The bankruptcy court may also compel debtor to turn unrecorded information over to the trustee. The trustee may seek the bankruptcy court's help in enforcing the performance of these duties of cooperation and production. These duties and Bankruptcy Code provisions are critical to the administration of a bankruptcy estate.[5]

The Appellant, Steven Rupp, Chapter 7 Trustee of debtor Kenneth Auld's bankruptcy estate (the "Trustee"), sought the bankruptcy court's assistance in requiring Auld to turn over cash from a contract receivable, vehicle titles, loan applications, and documents. He also requested an "explanation" of certain property dispositions arising out of Auld's divorce and information about his life insurance. Despite Auld's failure to oppose these requests, the bankruptcy court denied them and the Trustee appealed. We reverse.

---

[1]    11 U.S.C. § 704(a)(1). *See also* § 704(a)(4) (trustee's duty to investigate debtor's financial affairs).

[2]    11 U.S.C. § 521(a)(3) and (a)(4). *See also* Fed. R. Bankr. P. 4002.

[3]    11 U.S.C. § 542(a) and § 521(a)(4).

[4]    11 U.S.C. § 542(e) and § 521(a)(4).

[5]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All references to "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

Among the trustee's statutory duties is the duty to oppose the debtor's discharge when it is "advisable."[6] To do that, the trustee must file an adversary proceeding within sixty days after the first date set for the first meeting of the creditors under § 341.[7] The Rules allow the bankruptcy court to extend that deadline for cause.[8] The Trustee requested a ninety-day extension in this case because Auld had not responded to his previous informal requests for information. Though Auld did not oppose the extension, the bankruptcy court denied it for lack of cause. We conclude this portion of the Trustee's appeal is moot. The requested extension expired because the Trustee did not seek a stay pending this appeal.

## I.   APPELLATE JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction to hear appeals of final orders.[9] A final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[10] An order denying turnover of property and recorded information is a final, appealable order.[11] An order denying an extension of time to file a complaint objecting to

---

[6]   11 U.S.C. § 704(a)(6).

[7]   Fed. R. Bankr. P. 4004(a) and 7001(4).

[8]   Fed. R. Bankr. P. 4004(b).

[9]   28 U.S.C. § 158(a)(1), (b)(1), and (c)(1).

[10]   *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[11]   *In re Ruiz*, 455 B.R. 745, 747-48 (10th Cir. BAP 2011); *In re Graves*, 396 B.R. 70, 72 (10th Cir. BAP 2008), *aff'd as modified*, 609 F.3d 1153 (10th Cir. 2010).

a debtor's discharge under § 727 is a final, appealable order.[12] Trustee timely appealed the bankruptcy court's final order denying turnover and an extension of time.[13] Because neither Trustee nor Auld elected to have the district court hear this appeal, we have jurisdiction over this appeal.[14]

We review questions of law, including the proper application of the Bankruptcy Code's turnover provision, *de novo*.[15] We review the bankruptcy court's determination of whether cause exists to extend the time to object to a debtor's discharge for abuse of discretion.[16] This requires that we have a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances or that the court's determination is arbitrary, capricious, or whimsical or results in a manifestly unreasonable judgment.[17]

---

[12]     Because the denial of an extension of time to object to Auld's discharge had the effect of extinguishing the Trustee's right to contest Auld's discharge, it is a final order. *See Lure Launchers, LLC v. Spino*, 306 B.R. 718, 720 (1st Cir. BAP 2004); *In re Inkster*, No. WO-00-063, 2001 WL 169758, at *2 (10th Cir. BAP Feb. 21, 2001).

[13]     Fed. R. Bankr. P. 8002(a).

[14]     28 U.S.C. § 158(c)(1).

[15]     *Ruiz*, 455 B.R. at 747 (whether "possession, custody, or control" was required at the time of turnover a question of law reviewed *de novo*); *Graves*, 396 B.R. at 72.

[16]     *Inkster*, 2001 WL 169758, at *2.

[17]     *Lang v. Lang (In re Lang)*, 305 B.R. 905, 908 (10th Cir. BAP 2004) (reviewing bankruptcy court's denial of an extension of time to file a notice of appeal for abuse of discretion), *aff'd*, 414 F.3d 1191 (10th Cir. 2005).

## II. FACTS

Debtor Kenneth Auld filed his Chapter 7 case on June 10, 2015. The Trustee was appointed and conducted a § 341 first meeting of the creditors on July 28, 2015. At the § 341 meeting, Auld provided the Trustee with some unspecified written information. In keeping with local bankruptcy practice, at the first meeting the Trustee presented a written "directive" to the debtor.[18] That directive, dated July 28, 2015, "instructs" Auld to provide the Trustee with the following:

- Copies of his 2015 federal and state tax returns when they are filed and not later than March 1, 2016 as well as 162/365 of any 2015 refund when received;

- "Financial account statements" from May 1, 2015 to the "present;"

- Copies of a "divorce decree and settlement agreement;"

- "2 AFCU motorcycle loan documents and title;" and

- "Loan application for mortgage."[19]

The following day, July 29, the Trustee sent a follow-up e-mail to Auld's counsel requesting several more items.[20] These were:

---

[18] *Exhibit A, Motion to Extend Deadline for Filing Complaints Concerning the Debtor's Discharge and Motion for Turnover Order Pursuant to §521 and §542 of the Bankruptcy Code* at 7-8, *in* Appellant's App. at 62-63. The directive purports to be issued under "Local Rule 525." No such rule exists now; we presume this rule to be the predecessor of Bankr. D. Ut. LBR 4002-1 pertaining to the duties of a debtor.

[19] *Id.* at 8, *in* Appellant's App. at 63.

[20] *Exhibit B, Motion to Extend Deadline for Filing Complaints Concerning the Debtor's Discharge and Motion for Turnover Order Pursuant to §521 and §542 of the Bankruptcy Code* at 9-10, *in* Appellant's App. at 64-65.

- Turnover or a proposal for repayment of contract receivable proceeds in the amount of $3,224 Auld received on June 11, 2015;

- Turnover of the estate's portion of the Auld's foster children receivable for June 2015 (10/30);

- Identification of the source of a "$1,000 deposit on June 24 and the $750 deposit on 6/15/15;" and

- An explanation of a "recurring $852.50 payment (to American First?)," -- why that payment had not been disclosed in Auld's Statement of Financial Affairs ("SOFA"), and why Auld had made three such payments in June.[21]

Auld's counsel responded to the e-mail within minutes stating he would contact his client "right away."[22]

Auld produced some of the requested information on August 26. After a second e-mail, the Trustee filed his *Motion to Extend Deadline for Filing Complaints Concerning the Debtor's Discharge and Motion for Turnover Order Pursuant to §521 and §542 of the Bankruptcy Code* on September 28, 2015 (the "Motion"), seeking turnover, production, and a ninety-day extension of the Rule 4004(a) time to file a general objection to discharge under § 727(a).[23] The time sequence here is muddy. Trustee's Motion states, "after review of the production and information received on August 26,

---

[21]     *Id.* at 10, *in* Appellant's App. at 65.

[22]     *Id.*, *in* Appellant's App. at 65.

[23]     Motion, in Appellant's App. at 56.

2015, the trustee again made requests of the debtor . . . by an email dated *July 29, 2015*."[24] The latter date cannot be right and regrettably, this second e-mail is not in the record. In the Motion, the Trustee specifically requested the debtor to "surrender, produce, turnover and provide" the following within fifteen days of the bankruptcy court's order:

> (1) A contract receivable in the amount of $3,224 for the month of May, allegedly received the day after the bankruptcy petition was filed;
>
> (2) A fractional amount (10/30ths) of the contract receivable received by Auld in the month of July for services rendered in the month of June;
>
> (3) Copies of Auld's mortgage loan or credit applications given to obtain the present mortgage against Auld's property at Pinenut Circle;
>
> (4) Copies, front and back, of two America First Credit Union loan documents and a copy of the title to a 2009 Harley-Davidson motorcycle;
>
> (5) Copies of Auld's prepared and filed 2015 tax returns upon filing and the estate's portion of any and all 2015 refunds immediately upon receipt;
>
> (6) Copies, front and back, of titles to a 2004 and/or 2002 GMC Yukon;
>
> (7) An explanation concerning the disposition of property awarded to Auld in his most recent divorce decree; and

---

[24]    *Id.* at 2, *in* Appellant's App. at 57 (emphasis added).

(8) Information concerning any life insurance policy owned by Auld and required by paragraph twenty-four of Auld's divorce decree.[25]

The Trustee also requested an extension of time to December 28, 2015 in which to file a § 727(a) complaint in order to obtain "further time and opportunity to do all that the Trustee considers necessary to enable the Trustee to perform the Trustee's duties under § 521," and to give Auld additional time to comply with his statutory duties.[26] The bankruptcy court's docket sheet reflects that a proposed order was submitted with the Motion.

Auld did not object to the Trustee's Motion and there was no hearing. Nevertheless, the bankruptcy court denied the requests for turnover and extension of time in a *Memorandum Decision* (the "Order") entered on December 21, 2015.[27] In the Order, the bankruptcy court noted that the Motion lacked sufficient detail as to some of the requested relief and, generally, that information and explanations are not properly the subject of a turnover proceeding. The bankruptcy court said that information and explanations should instead be obtained informally or through the Rule 2004 discovery process. The bankruptcy court also noted that the Trustee had failed to demonstrate that the items requested were property of the estate or related to it and that Auld was currently in "possession, custody, or control" of them. The bankruptcy court deemed the Motion to

---

[25]   *Id.* at 4-5, *in* Appellant's App. at 59-60.

[26]   *Id.* at 3-4, *in* Appellant's App. at 58-59.

[27]   Order, *in* Appellant's App. at 66.

be premature in that the Trustee sought to invoke the turnover power before conducting formal discovery and because it was unclear whether the Trustee had previously requested all of the information and property sought in the Motion, a notion likely fostered by the sequence of dates pleaded in the Motion. Finally, the bankruptcy court denied the Trustee's request to extend the Rule 4004(a) deadline because "the Trustee has not stated any cause to extend" it.[28] Trustee timely appealed.

## III.    ANALYSIS

Turnover of Estate Property under § 542(a)

We review the bankruptcy court's legal conclusion that a debtor must be in current possession of the property to be turned over as a predicate to a turnover motion *de novo*. Section 542(a) states that an entity who has possession, custody, or control "*during the case*" of any property that the trustee may use, sell, or lease under § 363 or that the debtor may exempt under § 522, "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."[29] This provision effectively implements the debtor's duties under § 521(a)(3), to "cooperate with the trustee" so that he can perform his duties, and § 521(a)(4), to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers" that relate to the property of the estate. The mandatory language of these provisions suggests that they are self-executing; in other

---

[28]    Order at 11, *in* Appellant's App. at 76.

[29]    11 U.S.C. § 542(a) (emphasis added).

words, a debtor who has at any time during the case been in possession of property of the estate or recorded information about it has an affirmative duty to turn it over, without first requiring a demand or turnover motion by the trustee.[30] Rule 4002 and Utah's Local Rule 4002-1 underscore the debtor's duties of cooperation, turnover, and production.[31] The performance of these duties is necessary if a trustee is to fulfill his or her statutory duties under § 704(a), especially the duty to collect and liquidate all of the property of the estate.[32] A trustee's remedy for non-performance is to obtain a court order requiring the debtor to turn over or account for estate property and recorded information.[33] A debtor who fails to comply with a turnover order risks being held in contempt or being denied a discharge for violating a court order.[34]

Here, the bankruptcy court concluded that the Trustee had failed to demonstrate that Auld had possession of the property at the time he filed the Motion and that the

---

[30] *In re Reeves*, 509 B.R. 35, 65 (Bankr. S.D. Tex. 2014); *Hays v. Shaw (In re Shaw)*, No. 10-06025-MGD, 2010 WL 3397438, at *1, n.2 (Bankr. N.D. Ga. June 10, 2010).

[31] *See* Fed. R. Bankr. P. 4002(a)(4) (duty to cooperate with trustee in the administration of the estate) and (b)(2) (specifying documentation to be produced at the § 341 meeting of creditors); Bankr. D. Ut. LBR 4002-1(b)(2) (requiring debtor to provide within 14 days of the trustee's written request "any other documents, recorded information, or *other information* reasonably necessary for the effective administration of the estate") (emphasis added).

[32] *See* 11 U.S.C. § 704(a)(1), (2), (4), and (6).

[33] See 11 U.S.C. § 542(a) and (e).

[34] *See* 11 U.S.C. § 727(a)(6) (violating a lawful order); *see also* § 727(a)(3) (concealing or destroying records); § 727(a)(4) (knowingly and fraudulently withholding recorded information); *and* § 727(a)(5) (failing to explain the loss or diminution of assets).

recorded information the Trustee sought was not "property" to be recovered in a turnover proceeding. We disagree.

"Present Possession" Not a Predicate to Turnover

Section 542(a)'s plain language makes clear that a trustee need only demonstrate that a debtor had "possession, custody, or control" of the property "during the case."[35] While some courts hold that the trustee must demonstrate that the debtor currently possesses the property the trustee seeks, possession "during the case" is all that is required. The Tenth Circuit Bankruptcy Appellate Panel has recently held as much in *In re Ruiz*.[36] In *Ruiz*, a trustee sought to recover funds that as a result of delays in clearing checks written by the debtors prepetition, remained in the debtors' checking account on the petition date. The bankruptcy court concluded that because the account merely constituted a debt owed by the bank to the debtors, it was the right to collect this debt, rather than the funds themselves, that constituted property of the estate. This led the bankruptcy court to hold that the debtors had no duty to collect on the bank's promise to pay for the estate's benefit, leaving the trustee to collect the bank's debt to the debtors from either the bank or the checks' payees, and denying the trustee's motion for turnover. In reversing the bankruptcy court, we held that funds on deposit in a debtor's bank

---

[35]    11 U.S.C. § 542(a).

[36]    *In re Ruiz*, 455 B.R. 745 (10th Cir. BAP 2011).

- 11 -

accounts on the date of the petition are indeed property of the estate under § 541—whose

scope "is broad and should be generously construed."[37]

We noted that while the debtors in *Ruiz* lacked actual "possession" or "custody" of

the funds "during the case," they had control of the funds during the case.[38] Even though

that "control" only lasted for two days after filing, we held that the duty of turnover

applies to any entity that holds estate property "at any time during the pendency of the

case."[39] As the Seventh Circuit Court of Appeals has held, if "upon receiving a demand

from the trustee, the possessor of property of the debtor could thwart the demand simply

by transferring the property to someone else," § 542(a) would have little effect.[40] *Ruiz*

referred to a prior unpublished order of this Panel, *In re Majors*, in which we "held that

§ 542(a) does not require current possession, so long as the trustee can establish that an

entity held the estate property at some point during the pendency of the case—including

immediately following the filing of the petition."[41] As *Majors* noted, "The obligation to

turnover extends not just to property presently in someone's possession, custody or

---

[37]     *Id.* at 749, n.12 (citing *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000)).

[38]     *Id.* at 750.

[39]     *Id.* at 750 n.15 (citing *Beaman v. Vandevanter Black, LLP (In re Shearin)*, 224 F.3d 353, 356 (4th Cir. 2000); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 55 (7th Cir. 1996)).

[40]     *In re USA Diversified Prods., Inc.*, 100 F.3d at 56.

[41]     *Ruiz*, 455 B.R. at 750-51 (quoting *In re Majors*,  Nos. KS-04-093, KS-04-097, 2005 WL 2077497, at *4 (10th Cir. BAP Aug. 29, 2005)).

- 12 -

control but to property in its 'possession, custody, or control during the case.'"[42] The

plain language of § 542(a) makes clear that present possession is simply not a

prerequisite to turnover.

Turnover or Production of Recorded Information under § 542(e)

The bankruptcy court premised its denial of the Motion in part upon its conclusion

that information is not necessarily "property of the estate" under § 541, nor is a turnover

proceeding the appropriate way to get it. But § 521(a)(4) expressly requires a debtor to

surrender not only property of the estate, but also "any *recorded information . . .* relating

to property of the estate."[43] Rule 4002 enforces and implements that duty by directing the

debtor to submit to examination and to cooperate with the trustee in "the administration

of the estate," and to provide certain documents at the § 341 meeting.[44] While § 542(a)

makes no express reference to recorded information, subsection (e) does, stating that after

notice and a hearing, the bankruptcy court may order any entity to "turn over or disclose"

recorded information relating to the debtor's property or financial affairs. In short,

§ 542(e) requires production or turnover of recorded information that relates to debtor's

---

[42]  *Majors*, 2005 WL 2077497 at *4 (quoting *In re U.S.A. Diversified Prods.*, 193 B.R. at 874-75  (internal citations omitted), *aff'd*, 196 B.R. 801 (N.D. Ind.), *aff'd*, 100 F.3d 53 (7th Cir. 1996)). Here, Auld did not object to the turnover request or contend that the subject property or recorded information no longer existed. This opinion does not address that factual scenario.

[43]  11 U.S.C. § 521(a)(4) (emphasis added).

[44]  Fed. R. Bankr. P. 4002(a)(1) and (4); (b)(2).

property or financial affairs, whether the recorded information is property of the estate or not.[45]

We disagree with the idea that the Trustee needed to pursue formal discovery under Rule 2004 before seeking turnover of the recorded information he had previously requested informally.[46] Nothing in § 542 or the case law requires that.[47] Section 521(a)(4) imposes a duty of production on the debtor without the necessity of the trustee filing a motion.[48] While there is certainly no question that Rule 2004 is an invaluable tool, its use is not a prerequisite to turnover under § 542(a) or (e).[49]

---

[45]    *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 419 (6th Cir. 2013) (action for turnover under § 542(e) does not require the information to be property of the estate); *Wagner v. Dreskin (In re Vaughan Realtors)*, No. 11-10-10759, 2015 WL 4498748, *5 (Bankr. D.N.M. July 23, 2015); *Henderson v. Legal Helpers Debt Res., L.L.C. (In re Huffman)*, 505 B.R. 726, 753 (Bankr. S.D. Miss. 2014); *In re Crescent Res., LLC*, 457 B.R. 506, 513 (Bankr. W.D. Tex. 2011); *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re Am. Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002).

[46]    Fed. R. Bankr. P. 2004.

[47]    *Reeves*, 509 B.R. at 65 (Bankruptcy Code contains no requirement "that the trustee make a demand, obtain a court order, or take any further action in order to obtain turnover [delivery] of the estate's property.") (quoting *In re Calvin*, 329 B.R. 589, 600 (Bankr. S.D. Tex. 2005)).

[48]    *Id.* (the turnover obligation as "self-operative and mandatory").

[49]    Under § 704(a)(4), a trustee's duties include investigating the financial affairs of the debtor and "a trustee has statutory authority to bring a turnover action in order to determine whether certain property belongs to the bankruptcy estate . . . ." *In re McKenzie*, 716 F.3d at 419. A turnover motion directed at a debtor to produce recorded information is itself an investigatory tool in the sense that it enforces the debtor's duties to surrender recorded information and to cooperate, and does not require an adversary proceeding. *See* Fed. R. Bankr. P. 7001(1).

<u>Cooperation and Production of "Other Information" under § 521(a)(3), Rule 4002(a), and Bankr. D. Ut. LBR 4002-1(b)</u>

In the Order, the bankruptcy court states that there is "no legal basis" to enter an order to provide an "explanation," saying that an explanation is "neither property nor recorded information that is subject to turnover."[50] We think § 521(a)(3)'s "cooperation" requirement, augmented by Rule 4002(a)(4)'s mandate that the debtor cooperate in estate administration, and implemented by Utah Bankruptcy Local Rule 4002-1, supply ample legal basis for providing information, including explanations, to the Trustee. Utah's Local Rule provides:

> (b) <u>Information Requested by the Trustee or by the United States Trustee</u>. In addition to financial information the debtor is required to provide as set forth in Fed. R. Bankr. P. 4002(b), the debtor must produce the following materials no later than 14 days after a written request by the trustee . . .
>
> (2) any other documents, recorded information, or *other information* reasonably necessary for the effective administration of the estate.[51]

Other courts in the Circuit have similar rules.[52] Utah's rule mentions both "recorded information" and "other information." The Trustee requested a variety of recorded and other information, first by e-mail, then by motion.

Utah's Local Rule 4002-1(d) contains a procedure for enforcing unfulfilled document and information requests, but it appears to be limited to certain <u>documents</u> not

---

[50]   Order at 10, *in* Appellant's App. at 75.

[51]   Bankr. D. Ut. LBR 4002-1(b) (emphasis added).

[52]   *See e.g.* D. Kan. LBR 4002.2 (Trustee Requests for Information from Debtors); D. NM LBR 4002-1 (Trustee Information Requests); Bankr. E.D. Okla. LR 4002-1 (Debtor – Duties).

timely provided by the debtor. Nothing in the record before us suggests that the Trustee invoked that procedure here, but the Trustee's Motion, while titled a "motion for turnover order," asks for a plethora of relief:

> The Trustee also requests under §521 and §542 of the Bankruptcy Code *an order of the Court requiring the debtor cooperate [sic] with the Trustee and* surrender, turnover, *produce and provide* books, records, documents, *information* and properties of the bankruptcy estate by a date certain.[53]

The emphasized language shows that the Trustee invoked his right to compel Auld's cooperation and, though it would have been preferable to have expressly requested "other information" under Local Rule 4002-1, the language of the Motion encompasses not only turnover of property of the estate and recorded information, but also "other information," including "explanations," that fall under Auld's obligation to cooperate with the Trustee. All of that relief is available under the Code and Rules.

### The Requests for Turnover or Production

Having concluded that (1) Auld need only have possessed property targeted for turnover "during the case," not at the filing of the Motion; (2) "recorded information" may be ordered produced under § 542(e); and (3) that a debtor's duty of cooperation, as imposed by § 521(a)(3) and Rule 4002(a)(4), and supplemented by Local Rule 4002-1 allows a trustee to obtain "other information," we dispose of the Trustee's specific requests as follows.

The requests for contract receivable proceeds and 10/30th of the July contract receipts should be granted. The exhibits to the Motion suggest that these are receivables

---

[53]     Motion at 1, *in* Appellant's App. at 56 (emphasis added).

from a foster care contract to which Auld was a party which were obviously discussed at the § 341 meeting. The copies of mortgage loan applications and loan documents, the AFCU loan documents, and vehicle titles are all requests for turnover of property possessed by Auld during the case or constitute recorded information related thereto pursuant to § 542(a) and (e). The July 29 e-mail suggests that Auld disclosed these assets at the § 341 meeting as well. Absent an objection to those requests, they should have been granted, too.

The Trustee's request for Auld's 2015 tax returns "upon filing" and tax refunds upon receipt is likewise an appropriate request for turnover under § 542(a) and (e). The estate's portion of the refund is a receivable of the debtor that Auld possessed during the case.

The requests for information on Auld's property disposition under his divorce decree and his life insurance constitute requests for "other information" that were subject to production under Rule 4002(a)(4) and the Utah Local Rule. The July 29 e-mail suggests that Auld and the Trustee discussed both topics at the § 341 meeting. While posing interrogatories or conducting a Rule 2004 examination are two ways of getting that information, nothing prevents a court from enforcing the "cooperation" duty in the way the Trustee asks.

As bankruptcy judges, we sign hundreds, if not thousands, of default "turnover" orders. We cannot vet every one of them in the detailed way the bankruptcy court did here and, because of that, we are sensitive to the bankruptcy court's concerns about what a motion for turnover should contain. The style of the Trustee's Motion is elliptical.

- 17 -

Couched in a disorganized way, it omits a potentially important exhibit (the second e-mail), fumbles the temporal sequence of events, and references a "directive" that is based on a local rule that no longer exists. Though the Trustee omitted the proposed order from the record here, we assume it would have mirrored the relief sought in the Motion and therefore suffered from the same vagaries, making it potentially difficult to enforce.

At a minimum, a motion for turnover should refer to the applicable current statutes and rules while making certain baseline representations. A motion should specifically state what property or information the trustee seeks and specifically represent that the debtor or other turnover target has possessed the requested property or recorded information during the case. It should allege that what is sought is either property of the estate or recorded information related to it or debtor's financial affairs. A trustee should plead, at least in summary form, why he or she believes the debtor or other target has the property or information, what other means of recovering it have been pursued, and how (or if) the debtor or other turnover target has responded. A Utah trustee might affirmatively state whether the motion is brought under Utah Local Rule 4002-1(b)(2). Had those allegations been plainly made here, and the Motion otherwise properly noticed to Auld, we suspect a turnover order would have long since issued, saving the Trustee, not to mention the bankruptcy court, considerable effort and expense.

Denial of Extension of Rule 4004(a) Deadline to Object to Discharge

We review the bankruptcy court's denial of Trustee's motion to extend the time to file a § 727(a) general objection to discharge for abuse of discretion. Rule 4004(a) provides for a sixty-day period running from the date of the first setting of the § 341

- 18 -

meeting of creditors in which a complaint to object to a debtor's discharge under § 727(a) may be filed. The bankruptcy court issued a notice setting the § 341 meeting for July 28, 2015, and set September 28, 2015, as the deadline for filing objections to the Auld's discharge under § 727.[54] The bankruptcy court may extend that time for cause, but the motion must be filed before the sixty-day deadline has expired.[55]

September 28, 2015 (a Monday) is sixty-two days from the first setting of the § 341 meeting, not sixty days. The Trustee filed the Motion on September 28, 2015, the last day set by the bankruptcy court to file a § 727 complaint.[56] The Trustee did not request a stay of the Order denying the extension pending an appeal.[57] In the absence of a stay pending appeal, the time for bringing a § 727(a) objection to discharge action has long since expired, with or without the ninety-day extension.[58] The Trustee's Motion is therefore

---

[54] *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* in Appellant's App. at 7.

[55] Fed. R. Bankr. P. 4004(b)(1). Rule 4004 addresses denial of discharge and is not jurisdictional; a party forfeits the right to assert untimeliness by failing to raise the issue before the court reaches the merits. *Kontrick v. Ryan*, 540 U.S. 443, 447 (2004).

[56] *See Themy v. Yu (In re Themy)*, 6 F.3d 688, 690 (10th Cir. 1993) (While Rule 4004 provisions are strictly enforced and bankruptcy court is without power to extend the 60-day period *sua sponte*, courts almost uniformly use equitable powers to allow an out-of-time filing when the creditor relies on a bankruptcy court notice setting an incorrect deadline).

[57] *See* Fed. R. Bankr. P. 8007(a)(1)(A).

[58] *In re Anthanassious*, 418 F. App'x 91, 97-98 (3rd Cir. 2011) (bankruptcy court had authority to grant debtor's discharge where no stay pending appeal of denial of extension was sought and the time fixed for a complaint objecting to discharge had expired; an appeal itself does not stay proceedings in the bankruptcy court).

moot and we need not consider whether the bankruptcy court abused its discretion in denying the extension for lack of cause.

## IV.    CONCLUSION

We REVERSE the bankruptcy court's Order denying the Trustee's Motion. We conclude that the bankruptcy court's Order denying the Trustee's Motion for an extension of time to file a § 727(a) objection to discharge is MOOT because the deadline for doing so has expired.