FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

November 23, 2020

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

SALEEM SHAIKH,

    Debtor.

_____

WILLIAM MARK BONNEY, CHAPTER 13 TRUSTEE,

    Appellant,

v.

SALEEM SHAIKH,

    Appellee.

BAP No. EO-20-012

Bankr. No. 19-80436
Chapter 13

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Oklahoma Eastern

_____

Before **ROMERO** Chief Judge, **HALL**, and **TYSON**,** Bankruptcy Judges.

_____

**TYSON**, Bankruptcy Judge.

_____

---

\*     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

\*\*     Honorable Kimberley Tyson, Bankruptcy Judge, District of Colorado, sitting by designation.

The chapter 13 trustee appeals the United States Bankruptcy Court for the Eastern District of Oklahoma's order confirming the debtor's plan of reorganization. The core of the trustee's argument is that the debtor improperly reported his household size, income, and expenses and his plan fails to provide all his projected disposable income for repayment of creditors. On that issue, we affirm the Bankruptcy Court's findings of fact and conclusions of law. The trustee also argues the plan of reorganization cannot be confirmed because the debtor has not paid all amounts under a domestic support obligation. As the record contains conflicting evidence on that issue, we remand to the Bankruptcy Court for findings of fact and conclusions of law consistent with this opinion.

## I.       Factual Background

Saleem Shaikh ("Debtor") filed a chapter 13 petition on April 25, 2019. Debtor lives in Weleetka, Oklahoma, in a house owned by his sister. Debtor's sister and mother also live in the house. In Official Form 122C-1, *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period*, Debtor indicated he had a household of one and annual income of $39,067.68.[1] Debtor's scheduled income placed him below the $46,756 median family income for a household of one in Oklahoma. As Debtor had below median income, he did not file Form 122C-2, *Calculation of Disposable Income*, which is used to calculate an above-median income debtor's projected disposable income.

---

[1]       Appellant's App. at 65.

Debtor filed his amended chapter 13 plan of reorganization on September 6, 2019 (the "Plan"). The Plan proposed payments of $745 per month for sixty months with $0 going to unsecured creditors. Mark Bonney, the chapter 13 trustee in Debtor's case ("Trustee"), objected to the Plan on two grounds. First, Trustee argued the Plan failed to devote all Debtor's disposable income to the payment of unsecured creditors. Trustee based his objection on the claim Debtor's scheduled income, expenses, and household size were inaccurate. Recognizing Debtor's sister, Rubeena Shaikh, filed a chapter 13 petition approximately five months before Debtor's petition,[2] Trustee argued because Debtor and his sister lived together, their income and expenses should be combined in their bankruptcy cases. Upon combining Debtor's income with his sister's income, Trustee argued the two could jointly increase their plan payments by $778.56 per month. Trustee also argued because Debtor and his sister lived with their mother, who contributed Social Security Income to household expenses, the three were an "economic unit." Consequently, both Debtor and his sister should have declared a household size of three when calculating current monthly income and reasonable and necessary expenses.

Second, Trustee objected to the Plan on the basis that Debtor failed to comply with Trustee's requests for documents, including evidence of expenses and domestic support obligations. Explaining Debtor indicated he financially supported his three children at the § 341 meeting of creditors, Trustee objected to the Plan's certification there were no

---

[2]     Rubeena Shaikh filed a chapter 13 petition in the Eastern District of Oklahoma December 2018, case number 18-81389. The Bankruptcy Court confirmed Rubeena's thirty-six month plan of reorganization on May 14, 2019.

outstanding domestic support obligations.[3] At Debtor's § 341 meeting, he stated in his divorce proceeding with his first wife, the state court ordered him to pay child support, but he and his first wife informally modified the child support amount without a court order.[4] Debtor also stated although he was under no court order to provide support to his child with his second wife, he still provided monthly financial support.[5] Trustee argued both statements conflicted with Debtor's certification he was under no court order to pay any domestic support obligation[6] and Debtor failed to comply with requests to produce the court order imposing the domestic support obligation.

The Bankruptcy Court held a hearing on the Plan's confirmation on February 4, 2020. At the confirmation hearing, Debtor testified he paid for expenses at his sister's house, including water and electric utility bills. Debtor testified he also paid for internet service at his sister's house.[7] Other than payments for these utilities, Debtor testified he did not comingle his income with his sister or his mother. Debtor also testified he provided for his children's expenses each month. Debtor estimated he made payments of between $400 and $500 per month to support his three children but that he previously paid $1,600 per month to his first wife.[8]

---

[3]     Debtor testified he had three children, two with his first wife who live in Texas and one with his current wife who lives in Massachusetts.
[4]     *341 Meeting Tr.*, *in* Appellant's App. at 41-42.
[5]     *341 Meeting Tr.*, *in* Appellant's App. at 42-43.
[6]     *Pre-Confirmation Certification for Confirmation for Chapter 13 Plan and Certification Regarding Payment of Domestic Support Obligations*, *in* Appellant's App. at 267; Plan at 3, *in* Appellant's App. at 8.
[7]     *Tr.*, *in* Appellant's App. at 244.
[8]     *Tr. in* Appellant's App. at 222-23, 247.

The Bankruptcy Court entered its *Order Confirming Amended Plan* (the "Confirmation Order") in which it found "insufficient evidence to establish that [Debtor's] financial household includes his sister or his mother, or that there is a significant commingling of financial accounts" on February 18, 2020.[9] The Confirmation Order did not address Trustee's objections to the Plan based on Debtor's failure to comply with requests for evidence of expenses and domestic support obligations. Trustee appeals.

## II.    Jurisdiction & Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the [United States Court of Appeals for the] Tenth Circuit."[10] No party elected to have this appeal heard by the United States District Court for the Eastern District of Oklahoma; thus, the parties have consented to our review.

"A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[11] "An order confirming a Chapter 13 plan is a final appealable order."[12]

---

[9]     *Order Confirming Amended Plan* at 2, *in* Appellant's App. at 5.
[10]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).
[11]    *In re Duncan*, 294 B.R. 339, 341 (10th Cir. BAP 2003) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).
[12]    *In re Picht*, 428 B.R. 885, 888 (10th Cir. BAP 2010) (citing *United Student Aid Funds Inc. v. Espinosa*, 559 U.S. 260, 269 (2010)).

Trustee raises two assignments of error: (1) whether the Bankruptcy Court erred in its factual analysis when determining Debtor is a household of one, and (2) whether the Bankruptcy Court erred in confirming the Plan. Where "the facts are undisputed and the issue revolves around the legal conclusion drawn from the facts against the backdrop of a statute; . . . we have a mixed question of law and fact where the legal analysis predominates. Our review is therefore de novo."[13] Review of the Bankruptcy Court's application of 11 U.S.C. § 1325(b) is a question of statutory interpretation, which we also review de novo.[14] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[15]

III.    **Discussion**

a.  **Review of Debtor's Household Size and Living Arrangement**

Review of Debtor's household size must be made in the context of the Bankruptcy Code's utilization of household size in chapter 13 cases. A debtor's household size is integral to determining the amount of a debtor's plan payments and whether a plan meets other confirmation requirements. The preeminent case discussing the confirmation

---

[13]     *Anstine v. Car Zeiss Meditec AG (In re U.S. Med., Inc.)*, 531 F.3d 1272, 1275 (10th Cir. 2008) (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1991)).

[14]     *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1274 (10th Cir. 2008) (citing *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1251 (10th Cir. 2001)), *aff'd*, 560 U.S. 505 (2010).

[15]     *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

requirements for a chapter 13 plan of reorganization is the Supreme Court's *Hamilton v. Lanning*.[16] In *Lanning*, the Supreme Court explained

> that if a trustee or an unsecured creditor objects to a Chapter 13 debtor's plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or "provides that all of the debtor's projected disposable income to be received" over the duration of the plan "will be applied to make payments" in accordance with the terms of the plan.[17]

A debtor's "disposable income" is "defined as 'current monthly income received by the debtor' less 'amounts reasonably necessary to be expended' for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures."[18] "'Current monthly income,' in turn, is calculated by averaging the debtor's monthly income during . . . the six full months preceding the filing of the bankruptcy petition."[19] "Current monthly income includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents."[20] A debtor calculates his or her current monthly income by completing Official Form B122C-1.

If a debtor's current monthly income is below the median for a household of the same size in his or her state, reasonable and necessary expenses include all amounts necessary for maintenance and support.[21] Therefore, a below median income debtor is not

---

[16]   *Hamilton v. Lanning*, 560 U.S. 505 (2010).
[17]   *Id.* at 509.
[18]   *Id.* at 510 (quoting §§ 1325(b)(2)(A)(i) and (ii) (2006)).
[19]   *Id.* (citing § 101(10A)(A)(i)).
[20]   11 U.S.C. § 101(10A)(B)(i).
[21]   *Lanning*, 560 U.S. at 510 (citing § 1325(b)(a)(A)(i)).

required to calculate monthly disposable income. If a debtor's current monthly income is above the state median for a household of the same size, "only certain specified expenses are included" in reasonably necessary expenses and the debtor must complete Official Form B 122C-2 to calculate his or her disposable income.[22] Therefore, confirmation of a chapter 13 plan of reorganization requires a bankruptcy court to consider a debtor's income and expenses in relation to the median income and expenses for a household of the same size.[23]

The Bankruptcy Court determined "Debtor is a single economic unit" on the basis there was "insufficient evidence to establish that [Debtor's] financial household includes his sister or his mother."[24] Trustee assigns error to the Bankruptcy Court's application of the facts to the law, suggesting Debtor, his sister, and his mother constitute an economic unit and should be considered a household of three.

Neither the Bankruptcy Code nor applicable precedent provide a method for calculating a debtor's household size. Courts considering the issue have come up with several approaches to calculate a debtor's household size, including (i) the number of people sleeping in a household (the "heads-on-beds test"), (ii) the number of dependents

---

[22]    *Lanning*, 560 U.S. at 510 (citing §§ 707(b)(2) (2006 and Supp. II), 1325(b)(3)(A) (2006)) (referencing the "means test").

[23]    *Johnson v. Zimmer*, 686 F.3d 224, 231 (4th Cir. 2012) ("A debtor's 'household' size is relevant to determining how to calculate certain parts of the debtor's 'amounts reasonably necessary to be expended.'").

[24]    Appellant's App. at 5.

declared in a debtor's tax return, or (iii) the number of people the debtor economically supports (the "economic unit test").[25]

There is no binding precedent in the Tenth Circuit establishing the method to calculate a debtor's household size under § 1325(b). Outside of the Tenth Circuit, the recent trend among bankruptcy courts considering the issue favors the economic unit test.[26] As the Fourth Circuit Court of Appeals explained, the economic unit test provides more flexibility. Under such a test,

> a debtor's "household" would include individuals who operate as an "economic unit" with the debtor: those the debtor financially supports and those who financially support the debtor. In other words, those whose income and expenses are interdependent with the debtor's are part of his or her "household" for purposes of § 1325(b). Such financial intermingling is an appropriate factor in determining "household" size under § 1325(b)(2) because the debtor's finances are the focal point of the Code.[27]

One treatise provides the economic unit "analysis takes into consideration the definition of Current Monthly Income under Code § 101(10A) and disposable income under Code § 1325(b)(2), allows for an examination of the economic realities of the situation, and can prevent the over- or under-inclusion of individuals that other methods permit."[28]

---

[25]     *Johnson*, 686 F.3d at 235-38 (analyzing the various tests used to calculate household size and adopting the economic unit test).

[26]     *In re Brown*, 546 B.R. 642 (Bankr. E.D.N.C. 2016); *In re Skiles*, 504 B.R. 871 (Bankr. N.D. Ohio 2014); *In re Ford*, 509 B.R. 695 (Bankr. D. Idaho 2014); *cf. In re Crow*, No. 11-19074-B-13, 2012 WL 8255519 (Bankr. E.D. Cal. April 2, 2012) (holding debtor's boyfriend constituted a dependent for purposes of both the economic unit test and IRS tax purposes).

[27]     *Johnson*, 686 F.3d at 237.

[28]     Honorable W. Homer Drake, Jr. et. al., Chapter 13 Pract. & Pro. § 8:13 Determination of household for purpose of comparison to median income (2019).

As Trustee does not argue the Bankruptcy Court erred in concluding the economic unit test is the correct legal standard, our review pertains only to whether the Bankruptcy Court erred in its application of the economic unit test. The Bankruptcy Court's analysis is brief, simply stating there is insufficient evidence to find Debtor's financial household includes his sister or mother. Our review of this issue requires us to affirm.

Trustee argues application of the economic unit test required the Bankruptcy Court to consider whether the income and expenses of Debtor's sister and mother are intermingled with Debtor's to the extent the three acted as an economic unit. Trustee relies on several undisputed facts in support of his argument, including that (i) Debtor resides in his sister's home; (ii) Debtor's mother also lives in the home and does not manage her own finances; (iii) Debtor and his sister have separate bank accounts but share in paying household expenses; and (iv) Debtor and his sister regularly transfer funds to one another. However, we cannot determine the Bankruptcy Court erred in holding Debtor is a household of one on these facts alone.

Trustee directs the Court to several cases where courts considered individual debtors living with partners or family members as households of two or more. These courts base their combined household determination on the financial interdependence between a debtor and other household members. For instance, in a case cited by Trustee, *In re Morrison*[29] from the Middle District of North Carolina, the bankruptcy court found the debtor and her boyfriend consisted of a household of two. The debtor's boyfriend

---

[29]     443 B.R. 378 (Bankr. M.D.N.C. 2011).

owned the home the two lived in and paid the mortgage payments. The debtor did not pay rent but paid for food, utilities, and household goods for herself and her boyfriend. Applying the economic unit test, the bankruptcy court concluded the debtor and her boyfriend provided financial support to each other and shared a household despite maintaining separate bank accounts and filing separate tax returns. Trustee suggests the same analysis applies in Debtor's case.

We find the facts in *Morrison* and similar cases distinguishable.[30] In *Morrison*, the debtor and her boyfriend lived together as a couple, not solely out of financial need or mutual convenience. The debtor paid for food, utilities, and other necessities while her boyfriend paid for housing. The debtor and her boyfriend split the cost of necessary expenses in a manner that made each responsible for the other's expenses. In the present case, Debtor and his sister have separate bank accounts in which their individual earnings are deposited and, in all respects, behave as separate economic units. Debtor pays for his portion of the water and electric bills,[31] pays for internet service to the home, and reimburses his mother and sister if the two pay for his personal expenses.[32] As such, each did not take on the burden of the other's expenses and do not consist of an economic unit as in *Morrison*.

---

[30]     *In re Brown*, 546 B.R. 642 (Bankr. E.D.N.C. 2016); *In re Skiles*, 504 B.R. 871 (Bankr. N.D. Ohio 2014); *In re Ford*, 509 B.R. 695 (Bankr. D. Idaho 2014); *cf. In re Crow*, No. 11-19074-B-13, 2012 WL 8255519 (Bankr. E.D. Cal. April 2, 2012) (holding debtor's boyfriend constituted a dependent for purposes of both the economic unit test and IRS tax purposes).

[31]     *Tr.*, *in* Appellant's App. at 233-345

[32]     *Tr.*, *in* Appellant's App. at 243 (explaining Debtor reimbursed his sister and mother for groceries).

We note Trustee's suggested analysis has implications beyond this case. If we were to hold Debtor, his sister, and his mother constitute a household of three, then any living arrangement where residents share expenses would constitute a household. This would materially disadvantage students or other adults who are not related but split rent, utilities, and food to lower expenses as they would be considered an economic unit for income and expense purposes. Almost every college student splitting an apartment with friends would be subject to having his or her contributions considered income in a roommate's bankruptcy case, a consequence neither intended nor desired under Section 1325(b). Accordingly, we decline to adopt Trustee's expanded definition of a household.

### b. Review of Confirmation of Debtor's Plan

Trustee argues the Bankruptcy Court erred in confirming the Plan because Debtor failed to disclose income in the form of contributions from his mother and failed to comply with Trustee's repeated requests for the production of documents related to Debtor's expenses and domestic support obligations. We consider each argument in turn.

### i. The Bankruptcy Court did not Err by Failing to Account for Income Contributed by Debtor's Family Members

Trustee argues the Bankruptcy Court incorrectly concluded the Plan provides all of Debtor's projected disposable income to unsecured creditors as required by § 1325(b)(1)(B). Trustee argues the Social Security Income received by Debtor's mother that is contributed to Debtor's share of expenses should be included in Debtor's income calculations, even if Debtor is a household of one. Trustee recognizes Social Security Income is excluded from the calculation of current monthly income pursuant to

12

§ 101(10A)(B)(ii), but asserts the exclusion only applies to the direct recipient of the benefits. Trustee asserts where Social Security Income is contributed to the support of someone other than the direct recipient, that person must declare those funds as income. As such, to the extent Debtor's mother contributes her Social Security Income to the payment of Debtor's share of expenses, Trustee argues the contributions are Debtor's income.

The Confirmation Order does not directly address any gift of social security benefits to Debtor by his mother. Instead, the Confirmation Order states, "There is insufficient evidence to establish that [Debtor's] financial household includes . . . his mother, or that there is a significant commingling of financial accounts."[33] We read this to mean the Bankruptcy Court found no evidence Debtor received any income from his mother. Trustee introduced evidence Debtor's elderly mother held a joint bank account with his sister, who assisted Debtor's mother in her financial affairs. However, there is no evidence in the record to suggest Debtor's mother made specific payments for any expenses on his behalf. In fact, the evidence contradicts this argument, as Debtor made payments for portions of the electricity bill, the water bill, the entirety of the internet bill, and transferred money to his sister for expenses such as his share of groceries. Accordingly, we find no error in the Bankruptcy Court's conclusion Debtor maintains a household of one without contribution from his mother or sister.[34]

---

[33] Confirmation Order at 2, *in* Appellant's App. at 5.

[34] At oral argument, Trustee directed the Court to *In re Toxvard*, 485 B.R. 423 (Bankr. D. Colo. 2013), which held the payment of a debtor's individual expenses and share of joint expenses by a non-filing spouse on the debtor's behalf constituted current

### ii. The Bankruptcy Court did not Err in Declining to Consider Trustee's Argument that Debtor Failed to Comply With Requests for Production of Documents

Trustee repeatedly asserts Debtor failed to produce evidence of monthly expenses in support of the expenses claimed in Schedule J. To assist a chapter 13 trustee in investigating the financial affairs of a debtor,[35] the Bankruptcy Code provides a debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties."[36] Trustee argues Debtor's unwillingness to cooperate in Trustee's investigation of Debtor's financial affairs is demonstrated by his failure "to provide the Trustee with various documents in connection with his living expenses."[37] Trustee argues the failure to cooperate rises to the level of bad faith and the Bankruptcy Court erred in confirming the Plan in the face of such bad faith in contravention to § 1325(a)(7).

While Trustee bemoans Debtor's compliance with his requests for evidence of expenses, Trustee does not direct the Court to any itemized request for documents or attempt to compel compliance with the requests. Our review of the appellate record shows on October 11, 2019, Trustee requested bank statements and utility bills (including water, gas, electric, cell phone, internet, satellite or cable tv, and home phone service

---

monthly income. To the extent Trustee argues Debtor failed to account for income in the form of expenses paid by his sister or mother on his behalf, Trustee has waived this argument by failing to raise or expound on the argument in his opening brief. *Commonwealth Prop. Advocates, LLC v. Mortg. Elect. Regis. Sys.*, 680 F.3d 1194, 1200 (10th Cir. 2011) (quoting *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("[A]n issue or argument insufficiently raised in the opening brief is deemed waived.").

[35]     11 U.S.C. §§ 1302(b)(1) and 704(a)(4).
[36]     11 U.S.C. § 521(a)(3).
[37]     Appellant's Br. 27.

14

bills).[38] The record includes copies of water bills,[39] payments for electric bills,[40] payments for cell phone bills,[41] and internet service bills.[42]  Unsatisfied with this evidence, Trustee requested Debtor provide evidence of three months of Debtor's payment of necessities, including electricity, water, internet, and food, in the form of an affidavit during the § 341 meeting held October 24, 2019.[43] Debtor and his sister executed affidavits attesting to the portions of the utilities each paid on December 3, 2019.[44] After receipt of the affidavits, the record contains no other specific requests for production of documents made by Trustee.

On appeal, Trustee points to no portion of the record where he indicated to Debtor the December 2019 affidavits did not satisfy the inquiries made at the § 341 meeting. Furthermore, there is nothing in the record to suggest Trustee specifically identified any unfulfilled requests for documents.[45] Therefore, to the extent Trustee argues Debtor has not complied with his requests for production of documents, the argument is diminished

---

[38]     *Email Dated Oct. 11, 2019*, *in* Appellant's App. at 31.
[39]     Appellant's App. at 73-76.
[40]     Appellant's App. at 77-78.
[41]     Appellant's App. at 79-80.
[42]     Appellant's App. at 80-85.
[43]     *Tr. Oct. 24, 2019 § 341 Meeting*, *in* Appellant's App. at 58.
[44]     *Affidavits*, *in* Appellant's App. at 71-72.
[45]     On appeal Trustee only asserts "[m]ost" of the requested documents had not been produced. Appellant's Br. 25. At the confirmation hearing, the only item Trustee described in his claim Debtor failed to provide were "copies of actual cellphone bills." *Tr.*, *in* Appellant's App. at 258. Trustee's objections to confirmation state Debtor failed to provide all requested documents without specifying the outstanding requests. *Objection to Confirmation* at 1, *in* Appellant's App. at 191; *Trustee's Supplement to Objection to Confirmation of Debtor's Amended Chapter 13 Plan* at 2, *in* Appellant's App. at 194.

15

by Trustee's failure to identify any outstanding requests.[46] Absent Trustee's accounting of the documents Debtor failed to produce, the Bankruptcy Court did not err by failing to consider whether Debtor's noncompliance with Trustee's document requests amounted to bad faith.[47]

### iii. The Plan's Certification there are No Outstanding Domestic Support Obligations Contradicts Debtor's Testimony

Before filing the Plan, Debtor certified he was under no order to make any domestic support payments.[48] The Plan states Debtor is not delinquent on any court-ordered domestic support obligations.[49] However, Debtor's testimony he paid his children's expenses of between $400 and $500 each month and the divorce decree from his first marriage ordered $1,600 monthly payments contradicts these certifications.[50] The Bankruptcy Court confirmed the Plan over Trustee's objection to Debtor's certification there were no domestic support obligations or outstanding amounts due under such an obligation. On appeal, Trustee argues the Bankruptcy Court erred in confirming the Plan

---

[46]     Although Eastern District of Oklahoma Local Bankruptcy Rule 4002-1(F) places the burden on a debtor to request a court order excusing compliance with a request for documents "[i]f the debtor does not believe that the debtor is required to provide any document . . . requested by the trustee," without identification of the documents sought, it would be impossible for Debtor to meet such a burden. Bankr. E.D. Okla. LR 4002-1(F).

[47]     *See In re Auld*, 561 B.R. 512, 518 (10th Cir. BAP 2017) (explaining a trustee's remedy for a debtor's failure to comply with § 521(a)(3) is to file a motion for turnover that "specifically state[s] what property or information the trustee seeks.").

[48]     *Pre-Confirmation Certification for Confirmation for Chapter 13 Plan and Certification Regarding Payment of Domestic Support Obligations*, *in* Appellant's App. at 267.

[49]     Plan at 3, *in* Appellant's App. at 8.

[50]     *Tr.*, *in* Appellant's App. at 223-25, 247.

in light of § 1325(a)(8), which requires a debtor be current on all domestic support obligations. We agree.

The Confirmation Order states the Plan complies with all applicable provisions of § 1325.[51] However, the Confirmation Order does not address the domestic support obligations. Debtor testified he and his first wife consensually reduced the amount of child support payments from those due under their divorce decree without obtaining a court order. This alone suggests there are amounts due under a domestic support obligation—even if Debtor's first wife does not intend to collect those amounts. Furthermore, Debtor did not provide any evidence to show the domestic support obligation terminated or expired. Accordingly, the Bankruptcy Court's conclusion the Plan met all requirements under § 1325 is inaccurate as it neglects the requirement that Debtor has paid all domestic support obligations under subsection (a)(8). To the extent there are outstanding amounts due under a domestic support obligation, the Bankruptcy Court erred in confirming the Plan. Accordingly, we must remand this appeal to the Bankruptcy Court for further consideration of Debtor's domestic support obligations.

As we hold the Bankruptcy Court erred in failing to consider the status of any domestic support obligation, we need not consider Trustee's argument the Bankruptcy Court erred in failing to address whether the expiration of any order requiring such payments impacts Debtor's ability to propose a plan that contributes all of his projected disposable income to unsecured creditors. Once the Bankruptcy Court considers any

---

[51]     Confirmation Order at 2, *in* Appellant's App. at 5.

17

outstanding domestic support obligations, it will be better positioned to analyze that issue.

## IV.    Conclusion

While we agree with the Bankruptcy Court the evidence presented at the confirmation hearing was insufficient to suggest Debtor shared an economic household with his sister and his mother, it is unclear whether the Plan, as proposed, complied with § 1325(a)(8). Accordingly, the Confirmation Order is REVERSED and REMANDED for findings of fact and conclusions of law consistent with this opinion.